**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RONNETT M. LANGLOIS, | ) CASE NO. 3:15-CV-01682 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE <br> ) VECCHIARELLI |
| CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Ronnett M. Langlois ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act").  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On April 13, 2012, Plaintiff filed her application for SSI, alleging a disability onset date of April 25, 2002.  (Transcript ("Tr.") 25.)  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On March 11, 2014, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On March 27, 2014, the ALJ found Plaintiff not disabled.  (Tr. 38.)  On June 22, 2015, the Appeals Council

declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On August 21, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 15, 17, 18.)

Plaintiff asserts the following assignments of error: (1) the ALJ erred in evaluating the opinions of Plaintiff's treating physicians and psychiatrists; and (2) the ALJ erred by ascribing great weight to the opinions of State Agency reviewing psychologist. (Doc. Nos. 15 & 18.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in December 1978 and was twenty-three (23) years old on her alleged disability onset date. (Tr. 37.) She has no past relevant work, has at least a high school education, and was able to communicate in English. (*Id.*)

### B. Medical Assessments[1]

Plaintiff's treating psychiatrist, Vishwas Mashalkar, M.D., completed three Mental Functional Capacity Assessment forms bearing the markings of Ohio Job & Family Services.[2] (Tr. 661-663.) All three forms are identical check-the-box forms that ask the physician to rate a patient's abilities in 20 separate areas as either "not significantly

---

[1] Plaintiff's two assignments of error revolve entirely around the weight given to the assessments of two treating sources. Therefore, the Court foregoes a recitation of the evidence of record and instead sets forth only the relevant treating source opinions.

[2] It appears Plaintiff was first seen by Dr. Mashalkar on December 3, 2010. (Tr. 332-333.)

limited," "moderately limited," "markedly limited," or "not rated." (*Id*.) These terms are not defined by the form. (*Id*.)

There is no indication when the forms were completed, though the first form indicates that Plaintiff was last seen by Dr. Mashalkar on January 4, 2012. (Tr. 661.) Dr. Mashalkar checked boxes indicating that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, but was markedly limited in the following areas: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary work routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id*.) Dr. Mashalkar found Plaintiff moderately limited in the 14 remaining areas. (*Id*.) He concluded that Plaintiff was unemployable and that the above limitations were expected to last 12 months. (*Id*.)

The second form indicates that Plaintiff was last seen by Dr. Mashalkar on June 6 – the year is illegible. (Tr. 662.) Dr. Mashalkar checked boxes indicating that Plaintiff was not significantly limited in her ability to be aware of normal hazards and take appropriate precautions, but was markedly limited in the following areas: the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (*Id*.)  Dr. Mashalkar found Plaintiff moderately limited in 11 other areas and failed to complete two areas. (*Id*.)  He concluded that Plaintiff was unemployable and that the above limitations were expected to last between 30 days to 9 months.  (*Id*.)

The third form indicates that Plaintiff was last seen by Dr. Mashalkar on December 9, 2012.  (Tr. 663.)  Dr. Mashalkar checked boxes indicating that Plaintiff was not significantly limited in her ability to accept instructions and respond appropriately to criticism from supervisors – a marked limitation in the previous form. (*Id*.)  Plaintiff was then deemed markedly limited in thirteen areas (including 8 new areas), and moderately limited in only 6 areas.  (*Id*.)  He concluded that Plaintiff was unemployable and that the above limitations were expected to last between 30 days to 9 months.  (*Id*.)  None of the forms contain any explanation as to why Plaintiff is as limited as stated, nor do they contain a diagnosis setting forth Plaintiff's mental impairments.

On May 29, 2012, Pamela Hackl, D.O., completed a questionnaire for the Rehabilitation Services Commission.[3]  (Tr. 411-413.)  Dr. Hackl indicated that she did not believe Plaintiff's psychiatrist has helped Plaintiff bring her mood under adequate control and, therefore, increased Plaintiff's Seroquel prescription.  (Tr. 411.)  She

---

[3]  Plaintiff was first seen by Dr. Hackl on May 6, 2010 and last seen on May 18, 2012. (Tr. 412.)

4

indicated Plaintiff responded favorably with calmer affect and improved sleep. (*Id*.) Dr. Hackl stated that Plaintiff's diagnoses included the following: Vitamin B & D deficiencies, chronic pain, muscle spasm, history of diarrhea and dog bite, migraine, pernicious anemia, history of tinea corproris, tobacco abuse, history of coughing, asthma, anxiety, history of lower leg joint pain, fatigue, and osteopenia. (Tr. 412.) Dr. Hackl stated that Plaintiff's bipolar depression is not yet controlled, that her migraines are better, that her asthma is controlled, and that her pain is not gone. (Tr. 413.) Dr. Hackl opined that Plaintiff "is presently not mentally able to handle a work environment as her mood is not stable or controlled ..." (*Id*.) She did not believe Plaintiff was malingering. (*Id*.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

    At the March 11, 2014, hearing, Plaintiff testified as follows:

- She is 5'2" and weighs 123 pounds, having lost 70 pounds over the past year. (Tr. 50.)

- She has a driver's license and drives once a week for no more than 30 minutes. (Tr. 51.)

- She completed three years of college. (Tr. 52.) She had not worked full-time since 1996. (Tr. 53.)

- On a typical day, she wakes up at 6 a.m., packs her daughter a lunch, and goes back to bed at 7:30 a.m. and stay in bed until her daughter returns from school around 2:40 p.m. (Tr. 53-54.)

- She watches television, uses the internet primarily for social media, and speaks to her friends and family on the phone. (Tr. 54-55.) She goes grocery shopping on an irregular basis but is limited as she cannot lift more than 5 pounds. (Tr. 55, 60.) Typically, her parents go the grocery store on her behalf. (Tr. 60.)

5

- She gets dressed and combs her hair every 2 days.  (Tr. 55.)

- She has been unable to attend her daughter's sporting events for the last 2 years, and does not attend parent/teacher conferences.  (Tr. 56.)

- She does not prepare any of her own meals.  (Tr. 54.)  Later, she stated she and her daughter "try to get together some lunch" when the latter gets home from school and admits the two make dinner once a week, though her daughter does most of the work.  (Tr. 56, 60.)

- For her physical condition, she has been taking Percocet for at least 10 years; has been using a Fentanyl patch, a narcotic pain medication, for at least 10 years; Soma, a muscle relaxant, on and off for 10 years; and, Lyrica, which she began taking just recently.  (Tr. 57.)

- For her mental impairments, she takes Seroquel, Lamictal, and Trazodone.  The first two, which she started taking 7 to 8 years earlier, cause her to "sleep all day."  (Tr. 57.)  She also has been taking Xanax for 5 to 6 years.  (Tr. 58.)

- Her medications have caused the following side effects: memory loss, constipation, drowsiness, and caused her to shake.  She has discussed these side effects with her doctors, who believe the benefits outweigh the risk.  (Tr. 58.)

- She cannot work because when she is around a lot of people, she feels like she is drowning and gets panic attacks.  Physically, she has pain in her right buttocks and lower back which prevents her from doing any type of work for more than an hour.  (Tr. 59, 68.)

- For her back pain, she has received 2 nerve ablations, a nerve block, physical therapy, aquatic therapy, steroidal injections, and cortisone injections.  She has not had surgery.  (Tr. 59.)

- She sees a psychiatrist, who primarily prescribes medications, but was not in therapy.  (Tr. 60.)

- She has kidney stones and has had 4 surgeries.  (Tr. 61-63.)

- She suffers from headaches which are triggered by food allergies.  (Tr. 64-65.)

- She experiences numbness in her leg if she sits, stands, or walks for more than 30 minutes.  (Tr. 66.)  Her back pain is constant, and her pain

>her buttocks is also constant and feels like a sharp stabbing pain. (Tr. 66-67.)

### 2. Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical question to the VE:

>[P]lease assume a hypothetical individual the claimant's age and education with no past relevant work who can perform light work as that term is defined in the Dictionary of Occupational Titles. The individual can frequently climb ramps or stairs. Frequently balance, stoop, kneel, crouch, or crawl. They can never climb ladders, ropes, or scaffolds. They must avoid concentrated exposure to workplace hazards. Individual retains the ability to perform simple, routine, and some moderately complex step instructions not requiring her to sustain consistent attention or concentration over an extended period nor to meet strict time or fast paced production standards. She's able to make simple work related decisions and interact with others in work -- in a work setting on an infrequent, brief, and superficial basis. And is able to adapt to infrequent changes in routine in a predictable setting with clear performance expectations where changes can be anticipated in advance and fully explained. Are there unskilled occupations with jobs that exist in the national and regional economy that such an individual could perform?

(Tr. 77-78.)

The VE responded in the affirmative, identifying the following as examples of jobs that such an individual could perform: assembler, Dictionary of Occupational Titles ("DOT") 739.687-030 (4,000 jobs in the region, 160,000 nationally); packager, DOT 753.687-038 (2,000 jobs in the region, 80,000 nationally); and inspector, DOT 559.687-074 (2,000 jobs in the region, 80,000 nationally). (Tr. 78.)

The ALJ posed a second hypothetical asking the ALJ to assume a person of claimant's age and education with no past relevant work who could perform unskilled, sedentary work and was limited to simple, entry-level tasks. (Tr. 78-79.) The VE testified that such a person could perform the above identified inspector position in reduced numbers (1,000 in the region, 40,000 nationally), and some of the assembly

7

jobs (1,000 in the region, 40,000 nationally). (Tr. 79.) In addition, the hypothetical person could perform the job of a hand trimmer, DOT 734.687-094 (500 jobs in the region, 20,000 nationally). (Tr. 79.)

In a third hypothetical, the ALJ inquired what jobs would remain if he combined the mental RFC from the first hypothetical with the sedentary work from the second hypothetical. (Tr. 80.) The VE testified that such an individual could perform all the jobs cited in response to the second hypothetical. (Tr. 80.)

Using the ALJ's third hypothetical, Plaintiff's counsel inquired as to the impact of a limitation to no more than 5 pounds of lifting and a need to shift positions every 15 minutes. (Tr. 81.) The VE testified that those additional limitations would reduce the numbers of the previously identified jobs by approximately 50 percent. (Tr. 81-82.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate

that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c)*, and* 416.920(g).

### IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 13, 2012, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disk disease; a bipolar disorder; and migraines (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant: can frequently climb ramps or stairs, balance, stop, kneel, crouch, or crawl: can never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to workplace hazards.  She retains the ability to perform simple routine and some moderately complex 3-4 step instructions not requiting her to sustain consistent attention and concentration over an extended period nor to meet strict time or fast-paced productions standards; is able to make simple work-related decisions; is able to interact with others in a work setting on an infrequent, brief, superficial basis; and is able to adapt to infrequent changes in routine in a predictable setting with clear performance expectations, where changes can be anticipated in advance and explained fully.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on December 8, 1978 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 13, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 28-38.)

### V.  LAW & ANALYSIS

**A.  Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Treating Physician Rule

In her first assignment of error, Plaintiff asserts that the ALJ failed to adequately address the opinions of her treating physicians, specifically those of Dr. Hackl and Dr. Mashalkar. (Doc. No. 15 at pp. 13-18.)

11

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id.*

"The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985). Furthermore, it is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart,* 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the

12

temptation to play doctor.") (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); see also *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'") (O'Malley, J.)

> With respect to Dr. Hackl, the ALJ addressed her opinion as follows:
>
> In May 2012, Pamala Hackl, M.D., opined that the claimant is "not mentally able to handle a work environment as her mood is not stable or controlled, and in my opinion, I disagree with her psychiatrist." (Exhibit B3F at 4). Statements that a claimant is "disabled," "unable to work," "cannot perform a past job," "meets a Listing" or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Furthermore, the undersigned has given Dr. Hackl's opinion little weight as Dr. Hackl's opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise.

(Tr. 34-35.)

Plaintiff challenges the ALJ's characterization of Dr. Hackl's opinion as essentially an opinion that she is disabled or unable to work. (Doc. No. 15 at p. 14.) The Court disagrees, and finds the ALJ's treatment of Dr. Hackl's opinion as an opinion on an issue reserved for the Commissioner a reasonable interpretation in light of the evidence. While Dr. Hackl's opinion is rather thorough in its description of Plaintiff's diagnoses (Tr. 412) and in its description of Plaintiff's medications (Tr. 413), it is, by

13

contrast, glaringly devoid of any description of Plaintiff's functional limitations or a description of the symptoms that support any limitations. (Tr. 411-13.) Tellingly, Plaintiff fails to identify a single, specific limitation assessed by Dr. Hackl that she believes should have been included in the RFC. The closest approximation to a functionality assessment is Dr. Hackl's statement that Plaintiff "is presently not mentally able to handle a work environment as her mood is not stable or controlled ..." (Tr. 413.)

Plaintiff contends that it is not clear that Dr. Hackl's opinion falls into the category of opinions reserved to the Commissioner, because Dr. Hackl "focused on [Plaintiff's] ability to handle the mental demands of work." (*Id*.) This is a distinction without a difference. Regardless of whether a physician opines that a claimant cannot work due to mental limitations, physical limitations, or a combination of both, such an opinion – absent an explanation – is, at its core, an opinion that the claimant cannot work and, therefore, is disabled. An opinion that a claimant cannot work is not a "medical opinion." It is well established that a treating physician's opinion is only entitled to special attention and deference when it constitutes is a "medical opinion" as that term is defined by the regulations. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Opinions on issues reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–are not medical opinions, nor deserving of any particular weight. *Id.* (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

Here, Dr. Hackl opined Plaintiff would have difficulty working due to mental impairments, but assessed no further functional limitations. The ALJ correctly observed that Dr. Hackl's opinion was not a medical opinion, and thus, not entitled to deference.

14

Moreover, the ALJ expressly noted that Dr. Hackl was not a mental health specialist. (Tr. 35.) Pursuant to 20 C.F.R. § 416.927(c)(5), "specialization," is one of six factors that an ALJ should consider when evaluating opinion evidence. Further, there is no requirement that an ALJ engage in an explicit discussion of each factor. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion" — not an exhaustive factor-by-factor analysis.") (quoting 20 C.F.R. § 404.1527(d)(2)) (alterations in original). Accordingly, the ALJ provided good reasons for her decision to discount Dr. Hackl's opinion and her analysis comports with the treating source rule.

Turning to Dr. Mashalkar's January 2012 assessment, the ALJ explained the weight ascribed to his opinion as follows:

> In a mental functional capacity assessment, completed in January 2012, Vishwas Mashalkar, M.D., opined that the claimant was not significantly limited in her ability to remember work like procedures, in her ability to carry out short and simple instructions, and to be aware of normal hazards, but she was markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and to sustain an ordinary routine. (Exhibit 7F). The undersigned has given Dr. Mashalkar's little weight as the "check the box form" provides very little explanation of the evidence relied on in forming the opinion. However, in July 2012, Dr. Mashalkar suggested "'that the claimant should start working part time," and he told the claimant that, "he cannot attest to an indefinite period of disability for her." (Exhibit B6F at 9). Therefore, the January 2012 opinion contrasts sharply with Dr. Mashalkar's later treatment notes and suggestions, which renders the opinion less persuasive.

(Tr. 35.)

15

The ALJ specifically mentions Dr. Mashalkars' treatment notes from July 13, 2012 as contradicting his earlier January 2012 assessment. (Tr. 35.) On July 13, 2012, Dr. Mashalkar noted that Plaintiff "[s]till does not want to work," "[has] not worked for several years," that he had suggested she "can start working part time," that she had been told not to combine Xanax with Vicodin, and that he informed Plaintiff he "CANNOT attest to an indefinite period of disability for her." (Tr. 650, Exh. B6F at 9.) Plaintiff was also ascribed a Global Assessment of Functioning ("GAF") score of 65.[4] (Tr. 651, Exh. B6F at 10.) The Court finds nothing unreasonable about the ALJ's finding that this treatment note conflicts with and undermines Dr. Mashalkar's January 2012 assessment.

Furthermore, the ALJ found the "check the box" form utilized by Dr. Mashalkar provides no real explanation for the limitations assessed or the evidence relied upon in forming the opinion. (Tr. 35.) The ALJ's determination is not unreasonable, as "Supportability" is one of the factors specifically set forth in the regulations, which states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that

---

[4] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *See DSM IV at* 34. A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013). The ALJ specifically noted the presence of GAF scores from 60 to 65 which reflect only mild to moderate symptoms. (Tr. 34.)

16

opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(C). Numerous courts have agreed that the use of checklist or check-the-box forms, where no explanation is provided for the limitations assessed, are unsupported and, therefore, need not be accepted even when completed by a treating source. *See, e.g., Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140 at *4 (6th Cir. Jan. 12, 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds."); *Hyson v. Comm'r of Soc. Sec.*, No. 5:12CV1831, 2013 WL 2456378, at *14 (N.D. Ohio June 5, 2013) (finding that because Dr. Martinez merely checked the boxes on the form while leaving those sections of the form blank where she was to provide her written explanation, she failed to provide any substantive basis for her conclusions and the ALJ was not required to accept her opinions) (Burke, M.J.); *Smith v. Astrue*, 359 Fed. App'x 313, 316 (3d Cir. 2009) ("checklist forms ... which require only that the completing physician "check a box or fill in a blank," rather than provide a substantive basis for the conclusions stated, are considered "weak evidence at best" in the context of a disability analysis.") (citations omitted); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (citations omitted); *cf. Price v. Comm'r SSA*, 342 Fed. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding [claimant's] impairments, the ALJ did not err in discounting his opinion.") As such, the ALJ did not err by rejecting Dr. Mashalkar's

17

unexplained checklist opinion from January 2012.

Plaintiff also argues that the ALJ erred by not specifically addressing Dr. Mashalkar's two other assessments, which were contained on identical checklist forms. (Doc. No. 15 at pp. 15-18.) The Commissioner concedes the ALJ did not specifically address these opinions, but states that if there was any error, it was harmless because the ALJ was not required to repeat the same analysis twice as the latter two assessments suffered from the same shortcomings as the first. (Doc. No. 17 at pp. 11-13.) In her reply, Plaintiff counters that Dr. Mashalkar's other two assessments contain additional marked limitations that were not included in the first, and that Plaintiff was seen at least six more times by Dr. Mashalkar between the January 2012 assessment and the December 2012 assessment. (Doc. No. 18 at p. 2.)

Plaintiff's argument is unconvincing, as neither the inclusion of greater limitations nor the additional treatment visits overcome the shortcomings the ALJ identified in relation to the January 2012 assessment. The two other assessments, like the January 2012 assessment, are at odds with Dr. Mashalkar's July 13, 2012 treatment note. Moreover, the other two assessments are identical to the January 2012 assessment in that they are checklist forms completely devoid of any explanation for the severity of assessed limitations. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial

18

review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n.6 (1969)).[5]

The Court finds Plaintiff's first assignment of error to be without merit.

### 2. State Agency Physician

In Plaintiff's second assignment of error, she argues that "in light of the [ALJ's] failure to provide good reasons for the weight given to treating psychiatrist opinion," the ALJ erred inappropriately ascribed great weight to the opinions of State Agency reviewing psychologists. (Doc. No. 15 at pp. 18-20.) The Court, as explained above, has found that the ALJ did indeed set forth sufficient reasons for rejecting the opinions of Dr. Hackl and Dr. Mashalkar. Furthermore, the reasons given by the ALJ for ascribing those opinions little weight were not based on their conflict with the State Agency opinions.[6] Given the Court's disagreement with Plaintiff's underlying premise that the treating source opinions were improperly rejected, the second assignment of

---

[5] The Commissioner also points out that the other two assessments noted that Plaintiff's limitations would last between 30 days and 9 months, and therefore did not meet the 12 month durational requirement. (Doc. No. 17 at pp. 13-14.) Plaintiff responds that if all three assessments are stacked, the 12 month requirement for disability would be satisfied. (Doc. No. 18 at pp. 4-5.) Again, the Court disagrees with Plaintiff. The Court already found that the ALJ gave good reasons for rejecting the January 2012 assessment. Even if the other two assessments are fully credited and stacked, as Plaintiff suggests, the ALJ would have great leeway to choose whether the limitations as assessed lasted for as little as two separate 30 day spans of time or an aggregate 18 month span.

[6] In *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 377 (6th Cir. 2013), the Sixth Circuit found that an ALJ may not base his or her rejection of a treating source's opinion solely on its inconsistency with a non-examining source's opinion, as "[s]uch a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources." This holding is inapplicable to this case as the ALJ's stated reasons for assigning little weight to Dr. Hackl and Dr. Mashalkar did not include inconsistency with the State Agency psychologists.

error does not present any additional argument in need of disposition.

To the extent Plaintiff is suggesting that an ALJ errs by ascribing great weight to a State Agency doctor's opinion where a conflicting treating source opinion has been properly rejected, Plaintiff cites no law to support such a position. Moreover, State Agency opinions can constitute substantial evidence upon which an ALJ may base her decision. "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). The opinions of a State Agency reviewing psychologist constitute expert medical opinion evidence and may constitute substantial evidence when they are supported by the record. *See* S.S.R. 96-6P, 1996 WL 374180, at *1 (S.S.A.); *Senters v. Sec'y of Health & Human Servs.*, 960 F.2d 150 (Table), 1992 WL 78102, at *3 (6th Cir. Apr. 17, 1992) (citing *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990) (*per curiam*)).

Plaintiff's second assignment of error is without merit.

### VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                                        s/ *Nancy A. Vecchiarelli*
                                                       U.S. Magistrate Judge

Date: May 3, 2016